**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ELLEN L. FLEMING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. 1:10-CV-00973-SS** |
| | § | |
| **DELL INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF/COUNTER-DEFENDANT ELLEN L. FLEMING'S RESPONSE TO**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Ellen L. Fleming ("Fleming") files this Response to the Motion for Partial Summary Judgment ("Motion") filed by Dell Inc. ("Dell").

### I.    Introduction

1.    Fleming, a former female executive and 11-year employee of Dell, sued her former employer for, among other claims, sex discrimination and retaliation. During discovery, Dell learned that Fleming, while employed at Dell, preserved the contents of her Dell work laptop to a computer at her home in August 2008 and did not return the preserved copy to Dell in March of 2009, when she was terminated.  Dell also claimed, but not in this Motion, that Fleming wrongfully kept three boxes of Dell materials that a Dell Human Resources representative allowed her to keep when she returned to pick up her personal things.  It is undisputed that (1) Fleming never disclosed the contents of her Dell laptop to any third party; (2) Fleming never used the contents of her laptop except to access the preserved files a couple of times in connection with her EEOC Charge of Discrimination; and (3) Fleming never used the contents of her Dell laptop for her own personal monetary gain or for any commercial use.

2.    Despite these undisputed facts, Dell recently filed a counterclaim on August 12, 2011, against Fleming asserting, among other claims, that Fleming breached the terms of her

2006 and 2007 Performance Based Unit agreements ("PBU Agreements") pursuant to which Dell awarded her shares of Dell stock. Dkt. #30, ¶¶28-37.  Dell claims Fleming engaged in "Conduct Detrimental to Dell" when she preserved a copy of the contents of her Dell laptop and failed to return the copy to Dell. By its Motion filed only one month later, Dell is now asking this Court to rule as a matter of law that Fleming engaged in "Conduct Detrimental to Dell" and therefore must repay the value of certain shares she was awarded pursuant to the PBU Agreements in the amount of $84,786.50. Dell's claim and summary judgment motion smacks of intimidation and harassment, lacks merit and should be denied.[1]   In support of her Response, Fleming relies on the pleadings on file, and Appendix to her Response filed concurrently herewith in accordance with Local Rule CV-7(b).

## II.    Response

**A.    Dell's Motion fails because Plaintiff simply did not engage in Conduct Detrimental to Dell and Dell has suffered no damages.**

3.    Dell's Motion fails because it cannot establish as a matter of law that Plaintiff breached the PBU Agreements by engaging in "Conduct Detrimental to Dell."  In determining whether Plaintiff engaged in "Conduct Detrimental to Dell" and whether Fleming must forfeit the value of her shares, Delaware law applies. Motion, Dkt. #34, ¶14.  Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff.  *H.M. Wexford LLC v. Encorp, Inc*., 832 A.2d 129, 140 (Del.Ch. 2003).

4.    Dell argues that Plaintiff engaged in Conduct Detrimental to Dell by breaching the obligations in an Employment Agreement she signed in 1998 that states (a) not to "use,

---

[1]In its Counterclaim, Dell also asserts a breach of fiduciary duty claim against Fleming based on the same conduct— that Fleming made a copy of the files on her Dell laptop and failed to return them at her termination.  Dkt. #30, ¶¶13-21.  As damages for its breach of fiduciary duty claim, Dell seeks to recoup the compensation Fleming received for working at Dell from August 2008 until termination in March 2009.

publish, misappropriate, or disclose Dell's confidential and proprietary information and (b) to return all copies of all materials, documents and property of Dell at the time of her termination. Motion, Dkt. #34, ¶¶ 11-12. Because Plaintiff's Employment Agreement provides that "the laws of the State of Texas govern this Agreement," Texas law is applicable to determine whether Plaintiff even breached her obligations under the Employment Agreement. Appx., ¶4. In interpreting contract language, Texas courts give the terms their plain, ordinary, and generally accepted meanings unless the contract itself shows the terms are used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

5.      Applying this standard, Fleming did not "use, publish, misappropriate, or disclose" Dell's information in violation of her Employment Agreement as a matter of law. Black's Law Dictionary defines "use" as the "application or employment of something"—in this case, confidential information. *Black's Law Dictionary* 1681 (9th ed. 2009). Fleming testified that, other than accessing the preserved information on a few occasions in connection with her EEOC Charge and this litigation, she never accessed or used any of the Dell information for any purpose. Appx., ¶¶ 11-12. "Publish" is defined as "to distribute copies (of work) to the public…to communicate." *Black's* at 1352. There is no evidence that Fleming ever "published" any of the Dell information on her laptop. Appx., ¶¶ 11-12. "Misappropriate" is the "application of another's property or money dishonestly to one's own use." *Black's* at 1088; *see also Global Water Group, Inc. v. Atchley*, 244 S.W.3d 924 (Tex.App.—Dallas 2008, pet. denied)(actual use or disclosure of a trade secret is a required element of the tort of misappropriation of a trade secret, and such actual use refers to the **commercial** use by which someone seeks to profit from the use of the information). Here, there is no evidence that Fleming "misappropriated" Dell's information. Appx., ¶¶ 11-12. Finally, "disclosure" is defined as the "act or process of making known something that was previously unknown; a revelation of facts." *Black's*, at 531. There is

no evidence that Fleming disclosed the Dell information to anyone. Appx., ¶¶ 11-12.   In addition, Fleming's husband never accessed, reviewed or read the Dell information.  *Id.*

6.      With respect to Dell's second argument, that Fleming breached her Employment Agreement by virtue of her failure to return the Dell information at termination, it is necessary to look at the language of each PBU Agreement to determine if Fleming's conduct was sufficiently serious to constitute "Conduct Detrimental to Dell.  The PBU Agreements both define "Conduct Detrimental to the Company" as a breach of "your obligations to the Company with respect to confidential and proprietary information or trade secrets…." Appx., ¶3. The 2007 PBU Agreement, however, adds as an additional type of "Conduct Detrimental to the Company" the following: "the breach [of] any agreement between you and Dell relating to confidential and proprietary information or trade secrets."[2]  *Id.* In both PBU Agreements, the other types of offenses that Dell defines as "Conduct Detrimental to the Company" are "you engage in serious misconduct," "you compete with the Company," and "you solicit the Company's employees." *Id.*

7.      In determining whether Fleming's failure to return copies of Dell information that she never used or disclosed constitutes "Conduct Detrimental to the Company," it is important to examine the other types of offenses listed in the PBU Agreements that would constitute such conduct and would trigger such a draconian loss.  Under the rules of contract construction, the maxim "*noscitur a sociis*" dictates that the Court should look to the other listed offenses in the PBU Agreements to determine whether the type of breach Dell alleges that Fleming committed is the same type of breach or improper conduct as the other offenses.  *See New Castle County, Del v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 243 F.3d 744, 751 n.4 (3d Cir. 2001) (holding that "*Noscitur a sociis* "means that general and specific words capable of analogous meaning when

---

[2] Dell contends that Fleming's Employment Agreement is such an agreement.

associated together take color from each other so that the general words are restricted to a sense analogous to the specific words.").

8.      Here, the other types of offenses listed in the PBU Agreements as detrimental conduct are serious misconduct, competing with Dell and soliciting Dell's employees—all offenses that contemplate a serious offense and some type of actual harm or loss to Dell. Appx., ¶3.   In the 2007 PBU Agreement, Dell did not provide that **"any"** breach of the employment agreement would constitute detrimental conduct.  If Dell had wanted to provide that any breach, no matter how immaterial and regardless of whether Dell suffered any harm, constituted detrimental conduct, they were free to do so but did not.  A reasonable interpretation of the PBU Agreements, therefore, is that only material breaches of an employee's obligations with respect to Dell's confidential and proprietary information constitute "Conduct Detrimental to Dell."[3]

9.      Even if Dell could establish that Fleming's failure to return the Dell information constitutes "Conduct Detrimental to Dell," its claim fails because it has presented **no evidence of damages as a result of the breach**—a necessary element of a breach of contract claim.  *H.M. Wexford*, 832 A.2d at 140.

10.      Finally, Dell has filed its Motion one month after filing its counterclaim, and without Fleming's opportunity to even question a Dell witness on its claim that Fleming's alleged conduct was detrimental to Dell.  Fleming asserts that the motion can be denied on the

---

[3]In determining whether a breach is material, Delaware courts look at the following circumstances:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform will suffer forfeiture; (d) the likelihood that the party failing to perform will cure his failure, taking account of all the circumstances; (e) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing.

*Ewell v. Certain Underwriters of Lloyd's, London,* 2010 WL 3447570 (Del. Super. 2010).  The question of whether a breach is material and whether Dell has suffered any damages by Fleming's alleged breach of the PBU Agreements or her Employment Agreement are, at the very least, fact questions for the jury.  *Id*. at 7.  *Compare* Texas Pattern Jury Charge 101.2 ("If the parties dispute whether the alleged breach is a material one, the court should insert  . . . instructions regarding materiality . . . .").

basis asserted herein, but at a minimum, Fleming should be entitled to discovery on Dell's Counterclaim. See Appx., Exh. E, ¶¶ 6.

**B.     The provision in the PBU Agreements that requires Fleming to return to Dell the value of her shares is an unenforceable penalty, void against public policy and an unreasonable forfeiture.**

### 1. The provision to repay share value is an unenforceable penalty.

11.     Dell argues that, because Plaintiff engaged in "Conduct Detrimental to Dell" as defined by the PBU Agreements, she is contractually obligated to pay Dell the value of certain shares she received under the agreements and her failure to do so upon demand is a breach of contract resulting in damages to Dell.  Dell's claim fails as a matter of law because the provision in the PBU Agreements requiring Fleming to repay Dell the value of the shares is an unenforceable penalty and void against public policy.

12.     Damages "resulting" from a breach are a necessary element of any breach of contract claim under Delaware law. *H.M. Wexford,* 832 A.2d at 140.  Assuming *arguendo* that Fleming even engaged in "Conduct Detrimental to Dell" by preserving the contents of her laptop and not returning the information to Dell at her termination, it is undisputed that Dell has suffered no damage as a result of Fleming's alleged wrongful conduct.  Rather, Dell attempts to circumvent the lack of any damages by arguing that the breach of contract is not that Fleming engaged in Conduct Detrimental to Dell but rather that Fleming failed to pay Dell the value of her shares for doing so. Motion, Dkt. #34, ¶¶ 19-20, Appx., Exh. D, p.4.  Under its analysis, Dell maintains that its measure of damages for Fleming's breach is the value of the shares she refused to pay Dell. *Id.*  Dell's argument fails.  Regardless of Dell's attempt to characterize the provision requiring repayment of the shares as a contractual obligation, the fact is the provision is nothing more than Dell's attempt to set a fixed amount of damages that Fleming would be required to

pay in the event Fleming breached certain obligations to Dell set forth in the PBU Agreements. As such, the provision is either a liquidated damages provision or an unenforceable penalty.

13.     The question of whether a clause is a liquidated damages provision or a penalty is a question of law for the Court. *S.H. Deliveries, Inc. v. Tristate Courier & Carriage*, 1997 WL 817883 (Del. Super. 1997).  "Liquidated damages are a sum to which the parties to a contract have agreed, at the time of entering into the contract, as being payable to satisfy any loss or injury flowing from a breach of their contract.  It is, in effect, the parties' best guess of the amount of injury that would be sustained in a contractual breach…." *Id.* at *2.  "By contrast, a "penalty" is a sum inserted into a contract that serves as a punishment for default, rather than as a measure of compensation for its breach." *Id.*  "If a provision is considered a penalty, it is void as against public policy and recovery is limited to actual damages." *Id.*[4]

14.     In this case, the purpose of the provision requiring Fleming to repay Dell the value of certain shares she received under the PBU Agreements is without a doubt a penalty designed to punish Fleming for engaging in certain types of conduct, not a reasonable estimate of damages suffered by Dell as result of that conduct.  In fact, the amount that any Dell employee would owe under the PBU Agreements would be the same whether they misappropriated Dell's information and used it to compete with Dell or just failed to remember to return copies of Dell's documents after being laid off by Dell.  The fact that the amount owed bears no relation to the severity of the breach proves that the amount is not a reasonable forecast of estimated damages

---

[4] In determining if a clause is a penalty or for liquidated damages, Delaware law applies a two-part test.  A provision will be found to represent liquidated damages when:

> (1) the damages which the parties might reasonably anticipate are difficult to ascertain (at the time of contracting) because of their definiteness or uncertainty; and (2) the amount stipulated is either a reasonable estimate of the damages which would probably be caused by the breach or is reasonably proportionate to the damages which have been caused by the breach.

*Montague v. Seacoast Realty, Inc.*, 2003 WL 22787611 (Del. Super. 2003)(citations omitted).

but instead a fixed sum designed to punish the defaulting party. *See Montague*, 2003 WL 22787611 at *7 (where provision provided for a reduced commission payment upon agent's termination and actual damages, the court determined the provision was an unenforceable penalty because it was excessive and punitive).  Obviously, since the PBU Agreements are a Dell form, there was no negotiation as to the damages "the parties" would reasonably anticipate from a breach.

15.    Applying the well-settled law regarding penalty provisions, there can be no question that Dell intended the forfeiture provision to operate as a penalty, obviously to punish an employee for engaging in certain conduct.  Accordingly, the forfeiture provision is void against public policy and unenforceable, particularly without any proof of actual damages.

### 2. The provision to repay share value is an unreasonable forfeiture.

16.    It is also well-settled in Delaware that forfeiture provisions "are highly disfavored by the courts, including those of Delaware." *Clements v. Castle Mortgage Service Company*, 382 A.2d 1367, 1370 (Del.Ch. 1977). "Equity, of course, abhors a forfeiture.  And it is not obliged to permit a party to get the advantages which a forfeiture would give him." *Jefferson Chemical Co. v. Mobay Chemical Co.*, 267 A.2d 635, 637 (Del.Ch. 1970).  Further, "it will disregard a forfeiture occasioned by failure to comply with the very letter of an agreement when it has been substantially performed." *Id*.

17.    In this case, Fleming has "substantially performed" her obligations to Dell under the PBU Agreements.  Fleming has not engaged in serious misconduct, competed with Dell or solicited its employees. Fleming has not used, published, misappropriated or disclosed Dell confidential and proprietary information. Appx., ¶¶ 11-12.   Fleming's only alleged breach is, with the assistance of her husband, preserving files from her laptop, failing to return such files and apparently keeping, with Dell's approval, the three boxes of Fleming's materials.  Under the

facts of this case, forfeiture "would be out of all proportion as a remedy for the losses [allegedly] suffered to date by [Dell] as a result of [Fleming's] breaches." *Clements,* 382 A.2d at 1371.[5]

**D.   The provision requiring Fleming to repay Dell the value of the shares in the event the Court determines that any of the provisions of the PBU Agreements are unenforceable is similarly void and unenforceable.**

18.    In a footnote, Dell argues that Paragraph 17 of the PBU Agreements provide that Fleming is required to return to Dell the value of the shares received under the PBU Agreements, if a court determines that any of the provisions in the PBU Agreements are unenforceable. Dkt. #34, ¶21, n.1.  In support of its argument, Dell relies on *Olander v. Compass Bank*, 363 F.3d 560 (5th Cir. 2004), a case decided under Texas law in which the plaintiff sought to invalidate a non-compete provision with his former employer.   As noted above, Delaware law governs the interpretation of the PBU Agreements and this case does not involve a non-compete provision. Since the provision in the PBU Agreements requiring Fleming to repay her share value is an unenforceable penalty, enforcement of the provision providing that a Court's determination of unenforceability should also be void and unenforceable.  To hold otherwise would vitiate the law regarding penalties in Delaware.  In addition, Paragraph 17 would result in an unreasonable forfeiture and is therefore unenforceable on that basis as well.   Basically, Dell argues that paragraph 17 is a "trump card" to any court decision – thus in Dell's mind, making court interpretation irrelevant.

---

[5]Dell represents to the Court in its Motion that "Delaware courts enforce agreements like those at issue here" relying on *Rockwell Automation, Inc. v. Kall,* 2004 WL 2965427 (Del.Ch. Dec. 14, 2004).  *Rockwell* is not applicable.  In *Rockwell*, a commercial breach of contract dispute, the employee took confidential information in violation of his employment agreement, gave it to his counsel, and refused to return the documents upon his termination.  Rockwell, sought a declaration that Kall had breached his agreement by retaining the documents.  Kall sought to defend against the allegation by arguing that he needed the documents in support of his claim against Rockwell relating to an "earn-out payment."   In granting summary judgment in favor of Rockwell, the only issue decided by the Court was whether Kall was obligated to return the documents, not whether Kall owed any money damages to Rockwell.  In fact, in addressing Rockwell's conversion claim, the Court concluded there is a genuine issue of material fact with respect to what damages, if any, Rockwell suffered as a result of Kall's conduct.  Hence, Fleming's argument is that at best, fact issues are present as to whether she breached any agreement with Dell.

---

**E.      The implication by Dell in its Motion that Plaintiff is continuing to breach her Employment Agreement by failing to return Dell information is unfounded.**

19.     In its Motion, Dell seems to imply that Fleming is continuing to breach her obligations to Dell by retaining the Dell information on the computer in her home and even asks in its Prayer that the Court enter an Order directing Fleming to return the information. Dkt. #34, ¶¶ 2, 22.   Dell misleads the Court.  Shortly after Dell learned about the fact that Fleming preserved the information from her laptop, Dell's counsel wrote Fleming's counsel for a letter requesting that Fleming not access the data and "we will discuss how best to return the information to Dell." Appx., ¶16, Exh. E-1.  Within a few days, on a call with Dell's counsel, Fleming's counsel offered to have a third party retrieve the Dell information from the computer at Fleming's home and return it to Dell. Appx., ¶17.  Dell's Counsel said he would promptly send a proposal regarding removal of the Dell information but to date, has never done so. *Id.* Fleming has stood willing to accept a reasonable protocol to remove the material from the computer in her home, yet Dell simply filed its Counterclaim rather than reach an agreement on a protocol.  Accordingly, to the extent there is any implication in Dell's Motion that Fleming is failing and/or refusing to return the Dell information, that implication is false.

Wherefore Plaintiff Ellen Fleming respectfully requests that this Court deny Dell's Motion for Partial Summary Judgment.

Respectfully submitted,

Geoffrey D. Weisbart
State Bar No. 21102645
gweisbart@hslawmail.com
Tonia L. Lucio
State Bar No. 00793080
tlucio@hslawmail.com
**HANCE SCARBOROUGH, LLP**
111 Congress Avenue, Suite 500
Austin, Texas 78701
(512) 479-8888
(512) 482-6891 Fax

**SCOTT DOUGLASS & MCCONNICO, L.L.P.**
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(512) 495-6300
(512) 474-0731 Fax

By: s/  Julie A. Springer
        Julie A. Springer
        State Bar No. 18966770
        jspringer@scottdoug.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been

forwarded to all counsel of record herein by way of:

| | |
|---|---|
| ☐ | U.S. Mail, First Class |
| ☐ | Certified Mail (return receipt requested) |
| ☐ | Facsimile |
| ☐ | Federal Express |
| ☐ | Hand Delivery |
| ☒ | ECF |

on this 28th day of September 2011, to-wit:

Jason Boulette
Michael J. Golden
BOULETTE & GOLDEN LLP
2801 Via Fortuna, Suite 530
Austin, Texas  78746
Phone:  512.732.8901
Fax:  512.732.8905
E-mail:  jason@boulettegolden.com
            mike@boulettegolden.com

Michael Burkhardt (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Phone:  215.963.5000
Fax:  215.963.5001
E-mail:  mburkhardt@morganlewis.com

Rachel Morgan
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, Texas  75201
Phone:  214.466.4000
Fax:  214.466.4001
Email:  Rachel.morgan@morganlewis.com

By: s/  Julie A. Springer
        Julie A. Springer