IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ELLEN L. FLEMING, | § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. 1:10-CV-00973 |
| DELL INC., | § § | |
| | § | SECOND AMENDED COMPLAINT |
| Defendant. | § § | JURY DEMANDED |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Ellen L. Fleming ("Plaintiff") files this Second Amended Complaint against Defendant Dell Inc. ("Dell"), and states as follows:

### Introduction

1. This case arises out of Dell's discriminatory treatment of its female employees, including Ellen Fleming, in violation of federal and applicable state civil rights laws. Having satisfied all administrative prerequisites, Plaintiff filed her Complaint, and hereby amends such complaint.

### Parties

2. Plaintiff Ellen L. Fleming is a resident and citizen of Austin, Texas. Plaintiff was employed by Dell at its Round Rock, Texas location.

3. Defendant Dell is a Delaware corporation with its principal place of business in Round Rock, Texas.

### Jurisdiction

4. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action is brought under various statutes including Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* prohibiting gender discrimination in employment.

### Exhaustion of Administrative Remedies

5. Plaintiff has filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, among other things, gender discrimination against her with respect to her compensation, career opportunities, lateral transfer, placement, demotion, failure to scope her job and termination, and in regard to failing to pay her fully earned bonus. Plaintiff also alleged in her charge to the EEOC that she was illegally retaliated against for complaining about and opposing her illegal treatment.

6. Plaintiff has received a notice of right to sue from the EEOC and, accordingly, has exhausted all administrative prerequisites for the maintenance of this action. Plaintiff has also timely filed this action.

### Facts

7. Plaintiff is a female.

8. Plaintiff became employed by Dell's Global Finance organization in 1998. Plaintiff was hired as a Senior Manager in Corporate Planning and was promoted to Director, Finance in 2003, as Controller for Dell's Relationship Software & Peripherals Sales organization, a position she was asked to resume in 2006. Plaintiff ultimately rose to the level of a D3, an executive level position at Dell.

9. Plaintiff was well qualified for the positions she held at Dell.

10. In 2007, Plaintiff began reporting to a different Vice President of Finance ("VP of Finance"), Ms. Joan Hooper. Plaintiff was performing her job in an exemplary fashion.

11. Thereafter and despite performing at a high level, Ms. Hooper told Plaintiff that she was going to be replaced by a male executive, Mr. Sean Walsh, who also held an executive

level D3 position. Ms. Hooper told Plaintiff that Mr. Walsh's D3 position had been, or was being, eliminated.

12.     Specifically, Ms. Hooper told Plaintiff that, despite her valued performance, she was being replaced because Dell needed a "box" (Dell "slang" for position) for Mr. Walsh, the male executive. Ms. Hooper further instructed Plaintiff to manage a smooth transition of her team of employees and work responsibilities to Mr. Walsh. Ms. Hooper told Plaintiff that she needed to focus on a new and temporary role integrating the pending acquisition of ASAP Software into Dell through the fourth quarter of the fiscal year. Ms. Hooper further indicated that, given that Plaintiff was being replaced by Mr. Walsh, Dell did not know if there would be a role for, or what they would do with, Plaintiff after the fourth quarter of that fiscal year. Ms. Hooper did not provide information to Plaintiff as to why Mr. Walsh was not laid off, as opposed to taking Plaintiff's position, given that his prior position was being eliminated.

13.     Thereafter, Plaintiff was told she would be required to report to her male replacement, Mr. Walsh, and that he would now be her manager.

14.     Despite her surprise at Ms. Hooper's unexpected directive, Plaintiff told Ms. Hooper that she would continue to diligently and dutifully perform her duties at Dell. Plaintiff believed that the role she was to undertake was more complex, broader and longer than a several months in duration. In fact, the ASAP integration is still ongoing today. Plaintiff performed her new role diligently, competently and with success, despite not being provided adequate staffing or resources.

15.     Even though Plaintiff maintained a high level of performance and a good work attitude and ethic, Plaintiff was not awarded a salary increase in the Spring of 2008.

16. Both Mr. Walsh and Plaintiff were classified as D3 executives inside Dell and should have been "peers," yet now Plaintiff was reporting to Mr. Walsh. In addition, unbeknownst to Plaintiff at the time, Mr. Walsh was given a raise in the Spring of 2008.

17. In the Spring of 2008, Ms. Hooper told Plaintiff her role was "going away." Plaintiff was given two options: She could move to another position and accept a demotion to a non-executive D1 position; or she could "take a package," meaning termination and severance. Plaintiff did not want to leave Dell and advised Ms. Hooper that she would continue to perform any new roles with diligence and the same high level of competence she had always provided to Dell.

18. After telling Ms. Hooper that she wanted to continue as a Dell employee, Ms. Hooper then told Plaintiff that two males (who were not well suited for a leadership role in the integration) would be moved to perform the job she was performing (the one that was allegedly "going away"), and that she was required to train and transition the two males into her job. However, neither of the two men, who were both non-executive D1 level employees, was to report to Plaintiff. Unbeknownst to Plaintiff, neither of the two men who would be assuming her position were told that the job would go away as Ms. Hooper told Plaintiff.

19. While Plaintiff was transitioning the integration responsibilities to the two males to take over her role, Plaintiff was also asked by Ms. Hooper to manage the finance responsibilities of the Alienware integration (another software company Dell had acquired). Up to this point, the Alienware integration had been managed by a male executive, Mr. Martin Titus. Mr. Titus was also an executive level D3 Finance employee as was Plaintiff, however, Plaintiff was told she would perform a similar job as a D1, with potentially full finance integration responsibility.

20. Plaintiff continued to work diligently, now effectively doing two jobs: maintaining the leadership role for the ASAP integration while grooming her two male replacements to take over a role that was supposedly "going away" and initiating the Alienware integration. Plaintiff continued to be required to report to Mr. Walsh. Plaintiff continued to do her work competently and diligently.

21. In or around late June of 2008, Mr. Walsh scheduled a one-on-one meeting with Plaintiff. When Plaintiff arrived at the meeting, she was met by Mr. Walsh and by a Dell HR Generalist. The HR Generalist, Mr. Patrick Felder, informed Plaintiff that her position, in fact, was being "re-leveled" (a Dell term for demotion) from an executive D3 position to a non-executive D1 position. Although Ms. Hooper had suggested a demotion might occur, Plaintiff did not believe it could actually occur given the fact that her job performance continued to be exemplary and because she continued to do jobs that required the skills of a D3 Dell executive and that had, in fact, previously been performed by a D3 Dell executive. Plaintiff asked both men why this was happening to her, and if her "re-leveling" was performance based. The HR executive indicated the demotion was not performance based, instead indicating that her position was being "re-leveled" to "make room for other promotions," although he did not say for whom. Both men also advised Plaintiff that her job was going away in the third quarter of that fiscal year. When Plaintiff pressed both men to see if she had done anything wrong, Mr. Felder of Dell HR could not identify one thing, instead merely indicating that Plaintiff needed more one-on-one contact with the CFO (male) and his staff (predominantly male).

22. In the meeting, Mr. Walsh, a usually outgoing, gregarious man, was reserved, spoke only in a script and would not make eye-contact with Plaintiff. The HR Generalist's questions and responses also appeared scripted and both men seemed cautious and on edge. Upon information and belief, there was an effort in the Finance division to purge a D3 executive to open

up at least one D3 executive position for an incoming male external hire to assist the new male CFO of Dell. But instead of purging Mr. Walsh, whose job had already been saved once, Dell chose to purge Plaintiff.

23. In the meeting with Mr. Felder and Mr. Walsh, Plaintiff asked how this could all be happening to her and complained that she was being singled out versus the other men who had been accommodated. Plaintiff then requested a proper job scoping of her position because she believed she was doing a D3 level job. The scoping would prove the proposed demotion was unjustified. Plaintiff also requested the opportunity to look for another D3 job inside or outside the Finance organization. Neither man responded to her requests. Instead, they abruptly ended the meeting after Plaintiff raised her complaints and requests. Mr. Felder only responded to Plaintiff by saying they would have to speak with Ms. Hooper about her complaints and requests.

24. Mr. Walsh and Mr. Felder then advised Ms. Hooper as to how the meeting with Plaintiff went and Plaintiff's request for an independent review of her status being re-leveled. At that time, Ms. Hooper became aware that Plaintiff was not okay with a demotion, and had in fact asked for an independent analysis of the scope and requirements of her job.

25. Plaintiff then tried to meet with Ms. Hooper. Plaintiff wanted to discuss with Ms. Hooper her movement to Alienware, the alleged demotion to a D1 position and the replacement of her with two men. When she met with Ms. Hooper, Plaintiff again asked why this was happening and restated her prior request for a proper job scoping. In response, Ms. Hooper categorically refused Plaintiff's request for a job scoping, indicating that Dell was not going to scope a job that was "going away." (Yet, curiously, Plaintiff had been instructed to train and was training two males to take over her job, and the two men gave no indication they were told the position was going away.) Ms. Hooper again told Plaintiff that she could leave the company with a package or

accept a demotion. Again, Plaintiff told Ms. Hooper that she would continue to do her job at Dell, and would not resign. Ms. Hooper then ended the meeting without any further discussion.

26. After refusing to resign, Plaintiff's manager, Mr. Walsh, began to subject Plaintiff to hyper-scrutiny and began to obsessively document his interactions with Plaintiff. In addition, Ms. Hooper evaded Plaintiff's attempts to meet with her and ultimately, outright refused to meet. Plaintiff's request for assistance in finding another position was denied, no effort was made to notify Plaintiff of any available positions and in fact efforts were taken, by what appeared to be Ms. Hooper, to keep Plaintiff from obtaining other D3 positions at Dell.

27. Dell never notified Plaintiff in accordance with its policies that she had been demoted. Plaintiff was apparently, however, officially demoted on or around the end of October 2008.

28. Dell has policies in place concerning a "re-leveling" of an employee's grade or position.

29. Plaintiff never received anything in writing officially notifying her of a re-leveling analysis and she never got a chance to comment upon the analysis.

30. Plaintiff did notice around the end of October of 2008 that she was taken off Executive Communications and invitations to the Executive Briefings with Michael Dell and his senior staff, which she received previously due to her executive D3 status. This was her only "notice" that her demotion actually occurred.

31. During the relevant time period, it became apparent to Ms. Hooper and Mr. Walsh that the complexity of Plaintiff's former position proved too great for one of the two men who replaced her. Instead of termination, the male was accommodated, and placed into another position at Dell.

32. Neither of the two males was terminated or laid off.

33.     Plaintiff continued to diligently and dutifully perform her duties. On March 11, 2009, Plaintiff was notified she was terminated. A lesser qualified male assumed Plaintiff's role. Once again, Plaintiff was offered "a package," that offered her severance as long as she fully and specifically released Dell from claims of discrimination. Plaintiff's loss of her job was an act of discrimination and in retaliation for her complaints in the summer and fall of 2008 in opposing her discriminatory treatment. In retaliation, Dell even refused to pay her the bonus which she had fully earned at the end of January 2009, unless she released Dell from its actions. In actuality, Dell held her earned bonus hostage, and would not pay Plaintiff her earned income unless she released Dell from claims of discrimination and waived her rights to complain about its conduct.

34.     Other similarly-situated males were also accommodated with new roles at Dell within the Finance organization instead of being laid off around the time Plaintiff was laid off. The positions into which males were accommodated were positions for which Plaintiff was qualified. For example, the Director of Finance for Global Segments was not laid off, and instead was temporarily provided a position and ultimately promoted back to a D3 position.

35.     As another example, the former male CFO of ASAP, Mr. D. Polster (now a Dell employee) was initially supposed to be working equally with Plaintiff on the ASAP integration. Effectively, however, Plaintiff did the majority of the integration work and was on the integration leadership team responsible for all decisions and all Executing Steering Committee reviews. Mr. Polster was criticized in his role by Dell Accounting staff, yet the former male CFO was accommodated and given a role in the reorganization of the Finance organization. Plaintiff was not given this chance. Mr. Polster, a similarly-situated male to Plaintiff, was not laid off.

36.     In or around February 2009, the Relationship Software and Peripherals Controller role was eliminated. Mr. Walsh, who held the job and who replaced Plaintiff when she was doing

a fine job, was not terminated or laid off. Instead, Mr. Walsh was once again accommodated into another position at Dell.

37.     In or around February 2009, the Integration Management Office role provided for Mr. Titus was also eliminated, but yet again, Mr. Titus, a similarly-situated male, was accommodated into another role instead of being laid off or demoted. On the other hand, although Plaintiff's role was not eliminated, she was laid off, despite their being other open positions at Dell when the decision was made.

38.     As previously noted, the males who replaced Plaintiff in the ASAP integration role were accommodated and not laid off.

39.     Plaintiff, through hard work and dedication rose to the level of an executive at Dell, but despite strong performance was characterized as a "blocker" to other males' careers and positions. At least one Dell HR executive referred to Dell as one of the toughest old boy networks in the corporate world to break into. As noted herein, that culture pervaded Dell during Plaintiff's tenure and helps explain how Dell could cast aside such a valued female executive in order to make room for other male executive careers.

## COUNT I
## EMPLOYMENT DISCRIMINATION ON THE BASIS OF GENDER
## DISPARATE TREATMENT

40.     Plaintiff re-alleges and incorporates the foregoing facts by reference.

41.     Plaintiff, a female, is a member of protected classes within the meaning of 42 U.S.C. § 2000e *et seq.*

42.     Dell is an employer within the meaning of 42 U.S.C. § 2000e *et seq.*

43.     Dell has far more than 300 employees.

44.     The discriminatory policies or practices of Dell, as set forth in this Complaint, have denied Plaintiff of her right to equal employment opportunity in violation of 42 U.S.C. §

2000(e) *et seq.* Dell illegally discriminated against Plaintiff with respect to her compensation, terms, conditions and privileges of employment and ultimately discharged Plaintiff for illegal, discriminatory reasons.

45. Dell has treated Plaintiff differently and less favorably than similarly-situated, less qualified males under the same or similar circumstances.

46. Dell made accommodations for similarly-situated, less qualified males, who retained employment, but did not make such accommodations for Plaintiff, who lost her job.

47. Plaintiff was fulfilling Dell's legitimate performance expectations.

48. Plaintiff was qualified for the job she was doing, the other jobs into which males were accommodated and the jobs for which Plaintiff was not considered, but Plaintiff was not accommodated or considered, was demoted and was ultimately terminated.

49. Plaintiff's protected class was a motivating factor for her direct and indirect supervisors, who believed expressly and/or impliedly that it was easier to work afemale out of an executive position at Dell than a male in order to make room for other promotions and/or external hires.

50. The positions for which Plaintiff was not considered, from which she was demoted and from which she was terminated remained open after she was not considered, demoted and/or terminated and/or were filled by less qualified males.

51. Plaintiff suffered an adverse/tangible employment action when she was terminated in March of 2009.

52. Plaintiff also suffered adverse/tangible employment actions when males were accommodated and given raises, lateral transfers and effective promotions *vis-à-vis* her position, and were retained despite the alleged need to lay off employees in March of 2009.

53. Plaintiff has been damaged as a result of Dell's unlawful practices.

## COUNT II
## RETALIATION

54.   Plaintiff re-alleges and incorporates the foregoing facts by reference.

55.   Plaintiff complained to Dell regarding the discrimination against her at Dell as it related to Dell's different and less favorable treatment of her as compared to similarly-situated men.

56.   Dell illegally retaliated against Plaintiff for complaining of discrimination and opposing discriminatory practices at Dell. Dell retaliated against Plaintiff by, among other things, stripping her of her executive status and demoting her to Grade Level D1, denying her compensation and benefits, terminating her employment and not considering her for available positions, and not allowing or inhibiting her ability to obtain employment in other available positions for which she was qualified. Dell also retaliated against Plaintiff when it failed to pay her a bonus she had earned, and then used the bonus as leverage to attempt to force Plaintiff to release and waive her claims of discrimination against Dell. Even then, however, Dell only provided that it would pay 75% of the bonus earned by Plaintiff, withholding a portion that would be allocated, upon information and belief, to the bonus of male employees or Directors at Dell.

57.   Plaintiff has been damaged as a result of Dell's unlawful practices.

## COUNT III
## BREACH OF CONTRACT

58.   Plaintiff re-alleges and incorporates the foregoing facts by reference.

59.   Dell and Plaintiff had an agreement regarding the payment of Plaintiff's bonus for the Fiscal Year ending January 2009.

60.   Plaintiff was employed by Dell during all of the Fiscal Year ending January 2009. Plaintiff fully performed her duties, and did everything asked of her by Dell during the entire bonus period. Plaintiff fulfilled her end of the agreement.

61. Plaintiff performed all conditions to earn her bonus according to Texas law.

62. Dell terminated Plaintiff just prior to the date it was to pay her what she had earned. Similar to the analogy used by the Texas Supreme Court, it is as if Plaintiff was asked to paint Dell's house for a fee, and after fully and satisfactorily painting Dell's house, Dell took unilateral steps to avoid paying Plaintiff for her hard work, and then would only pay Plaintiff a portion of her earned bonus if she would release Dell from all liability.

63. Dell breached its agreement with Plaintiff by failing to pay her what she earned.

64. Alternatively, Dell's bonus plan, as drafted is ambiguous or contains a mutual mistake because it was never intended by Dell employee's for Dell to be able to unilaterally decide to terminate one or all of its employees, without cause, to prevent payment of an otherwise fully earned bonus.

65. Pleading alternatively, Dell's bonus plan, as drafted is unenforceable because it provides Dell with an unconscionable, or contractually impermissible right to unilaterally, and without cause, prevent an employee from satisfying the condition to receive payment.

66. Plaintiff has been damaged as a result, and had to retain counsel to seek payment of the sums due, since Dell would only pay Plaintiff the bonus she was owed (and then only partially) if she would release Dell from its other misdeeds. Despite demand by Plaintiff, Dell refused to pay her the sums she is owed, without a condition of providing it with a release of liability.

## COUNT IV
## QUANTUM MERIUT/UNJUST ENRICHMENT

67. Plaintiff re-alleges and incorporates the foregoing facts by reference.

68. Plaintiff provided Dell with valuable services for Dell's benefit.

69. Dell knew or should have known that Plaintiff expected compensation when Dell accepted the services.

70. Because Plaintiff expected compensation, Dell's acceptance of the services without full payment for the value of such services resulted in the damages for the reasonable value of the services.

71. Additionally and alternatively, if necessary, Dell engaged in conduct calculated to deprive Plaintiff of her bonus for the Fiscal Year ending January 2009. It would be unconscionable for Dell to retain Plaintiff's full bonus for the Fiscal Year ending January 2009 and/or the reasonable value of the services.

72. Plaintiff is entitled under the theory of unjust enrichment and Quantum Meriut to recover the full bonus for the Fiscal Year ending January 2009.

## COUNT V
## UNCONSCIONABLE BEHAVIOR, MISAPPROPRIATION OF SERVICES AND CONSTRUCTIVE FRAUD

73. Plaintiff re-alleges and incorporates the foregoing facts by reference.

74. Dell made a promise to many of its employees, which included Plaintiff, that they would be paid a bonus for the Fiscal Year ending January 2009 if the company met certain objective criteria.

75. Dell's financial performance met the objective criteria necessary to require it to pay the employees the bonus, as it had promised.

76.     Dell paid the bonus to its eligible employees who were employed at Dell at the end of March 2009.

77.     Dell however decided to lay off certain employees just prior to paying out the bonus earned by these employees.

78.     Dell specifically decided to make the employees' last day shortly before the date it would pay the bonuses to employees. Dell knew that the employees who lost their jobs would be in a particular need of the bonus to help make ends meet.

79.     Dell chose to engage in these terminations prior to the day it would pay the bonus so it could offer to pay the bonus in return for receiving a release of all claims against Dell from the laid off employees. Dell held the earned bonuses hostage as a way of insuring it obtained releases for any wrongdoing on its part.

80.     Every employee in the lay off with Plaintiff was only paid a portion of his or her bonus if the employee signed a detailed release and waiver of claims.

81.     Dell, as a result of its actions, held employee earnings with the calculated intention of not releasing such funds unless the company received a release and waiver of claims.

82.     The release and waiver which Dell required its employees to sign also required that the employee keep all the terms of the severance agreement confidential, so those employees who signed the release to get their bonus are prohibited from publicly disclosing what Dell did.

83.     Dell's actions in holding employee earnings is unconscionable, essentially misappropriation of services, and constructive fraud, all of which caused losses to Plaintiff.

## COUNT VI
## REQUEST FOR DECLARATORY RELIEF

84.     Plaintiff seeks a declaration of the rights of the parties under the applicable bonus plan regarding the payment of the bonus for the Fiscal Year ending January 2009. Specifically,

Plaintiff seeks a declaration that she has earned and is entitled to recover the full amount of the bonus for the Fiscal Year ending January 2009.

## DAMAGES AND PUNITIVE DAMAGES
## FOR DISCRIMINATION AND RETALIATION

85.     Plaintiff re-alleges and incorporates the foregoing facts by reference.

86.     By reason of Dell's discriminatory, retaliatory and unlawful employment practices as set forth in this Complaint, Plaintiff has suffered damage including, but not limited to, past and future lost income, past and future lost benefits, lost incentive stock options, lost promotional opportunities, embarrassment, emotional and physical distress, humiliation, indignity, mental anguish and an overwhelming anger and frustration so as to reduce, at times, Plaintiff's quality of life.

87.     Dell's wrongful conduct towards Plaintiff was illegal. Dell's conduct was also, at relevant times, intentional, malicious, deliberate, willful and oppressive, and was carried out with reckless and callous disregard for her rights. Such conduct demands the imposition of punitive damages and/or liquidated damages and Plaintiff seeks punitive and/or liquidated damages.

### Application of Continuing Violations Doctrine

88.     Dell's discriminatory and retaliatory conduct has been continuous and has persisted through Plaintiff's employment with Dell. Accordingly, Plaintiff is entitled to the application of the continuing violations doctrine as to the discriminatory and retaliatory conduct alleged.

## Attorney's Fees

89.     Plaintiff is entitled to and should be awarded attorneys' fees and costs pursuant to Title VII, Tex. Civ. Prac. & Rem. Code, Ch. 38, *et seq.*, the Federal Declaratory Judgment Act, and as otherwise provided by law.

## **Jury Demand**

90.     Plaintiff demands trial by jury on all issues triable of right by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectively prays:

1.      That the practices of Defendant complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under Title VII;

2.      That the Court declare Plaintiff has earned and is entitled to recover the full amount of the bonus for the Fiscal Year ending January 2009;

3.      That judgment be entered in favor of Plaintiff and against Defendant, for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiff;

4.      That Plaintiff be awarded compensatory and/or punitive damages;

5.      That the Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate and as the court may deem just or equitable;

6.      That the Plaintiff be awarded costs including, but not limited to, attorneys' fees, experts' fees, and other costs and expenses of this litigation; and

7.      For such and other and further relief, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

**HANCE SCARBOROUGH, LLP**
111 Congress Avenue, Suite 500
Austin, Texas 78701
(512) 479-8888
(512) 482-6891 Fax

By: _____
    Geoffrey D. Weisbart
    State Bar No. 21102645
    gweisbart@hslawmail.com
    Tonia L. Lucio
    State Bar No. 00793080
    tlucio@hslawmail.com

Julie A. Springer
State Bar No. 18966770
jspringer@scottdoug.com
**SCOTT DOUGLASS & MCCONNICO, L.L.P.**
600 Congress Avenue, Suite 1500
Austin, Texas 78701-2589
(512) 495-6300
(512) 474-0731 Fax

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

- ☐ U.S. Mail, First Class
- ☐ Certified Mail (return receipt requested)
- ☐ Facsimile
- ☐ Federal Express
- ☐ Hand Delivery
- ☒ ECF

on this 4th day of November, 2011, to-wit:

| | |
|---|---|
| Jason Boulette<br>Michael J. Golden<br>BOULETTE & GOLDEN LLP<br>2801 Via Fortuna, Suite 530<br>Austin, Texas 78746<br>Phone: 512.732.8901<br>Fax: 512.732.8905<br>E-mail: jason@boulettegolden.com<br>mike@boulettegolden.com | Michael Burkhardt (Admitted *Pro Hac Vice*)<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, Pennsylvania 19103<br>Phone: 215.963.5000<br>Fax: 215.963.5001<br>E-mail: mburkhardt@morganlewis.com<br><br>Rachel Morgan<br>MORGAN, LEWIS & BOCKIUS LLP<br>1717 Main Street, Suite 3200<br>Dallas, Texas 75201<br>Phone: 214.466.4000<br>Fax: 214.466.4001<br>Email: Rachel.morgan@morganlewis.com |

_____
Geoffrey D. Weisbart